IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CT-3063-H

| | |
|---|---|
| ALEXANDER ROBBINS, SR., <br>     Plaintiff, <br><br> v. <br><br> JOHN INGRAM and OFFICER SULLIVAN, <br>     Defendants. | **ORDER** |

This matter is before the court on defendants' motion for summary judgment [D.E. #20]. Although Mr. Robbins was issued a Roseboro letter on August 5, 2014 and subsequently requested and received an extension of time to respond to defendants' motion for summary judgment, he did not file a response. The time for filing a response has expired, and these matters are ripe for adjudication.

## STATEMENT OF THE CASE

Mr. Robbins, appearing pro se, filed a complaint on February 28, 2014, alleging harms committed by defendants, Mr. Ingram and Officer Sullivan, in violation of 42 U.S.C. § 1983. [D.E. #1]. Mr. Robbins alleges that while formerly being held in the Brunswick County Detention Center, he was housed in what he describes as a foul-smelling cell infested with mold, bacteria, and bed bugs. [D.E. #1 at 3-4]. In addition, Mr. Robinson further contends that he was served lukewarm meals and that he

was not allowed to go outside for exercise. [D.E. #1 at 3-4]. On or about December 26 or 27, 2013, Mr. Robbins alleges that "Officer Sullivan" watched him urinate and that an individual identifying himself as "Sullivan" in a later intercom communication made a comment of a sexual nature to him. [D.E. #1 at 3-4].

Defendants timely filed their answer on June 6, 2014, denying the material allegations of the complaint and asserting several affirmative defenses, including qualified immunity and failure to exhaust administrative remedies as required pursuant to the Prison Litigation Reform Act. [D.E. #11].

## STATEMENT OF THE FACTS

In September 2013, Mr. Robbins was convicted in New Hanover County of the offenses of credit card fraud and misdemeanor possession of marijuana. [D.E. #21-2 at 18]. He was sentenced to a term of confinement of 120 days and was sent to the Brunswick County Detention Center to serve his sentence pursuant to the Misdemeanant Confinement Program,[1] rather than being sent to a North Carolina Department of Correction Institution as he had expected. [D.E. #21-2 at 18 and #21-5 at 3].

Mr. Robbins claims that while being held in the Brunswick County Detention Center from September 16, 2013, to January 2, 2014, he was housed in a foul-smelling cell infested with mold,

---

[1] See N.C. Gen. Stat. §148-10.4

2

bacteria, and bed bugs. [D.E. #1 at 3-4]. During his tenure, Mr. Robbins claims further that, on many occasions, his meals were no longer hot by the time he received them. [D.E. #1 at 3-4]. Mr. Robbins claims that he was not allowed to go outside like he had been able to do when he was previously incarcerated in facilities operated by the North Carolina Department of Correction. Also, Mr. Robbins claims that a boil developed on two occasions in the same location on the side of his face. [D.E. #21-3 at 13-16].

Lastly, Mr. Robbins claims that on or about December 26 or 27, 2013, "Officer Sullivan" was standing outside of his closed cell door looking in through the window in the cell door while Mr. Robbins was urinating. When Mr. Robbins turned around, he asked Officer Sullivan, "What is it? What are you looking at?" [D.E. #21-3 at 13-16]. Mr. Robbins claims that an individual later "came over the speaker" in his cell and purportedly said words to the effect of, "Robbins, this is Sullivan. I could get you better sex than you ever had." [D.E. #1 at 3-4]. Officer Sullivan unequivocally denies making any statements of this kind to Mr. Robbins. Mr. Robbins acknowledges that prior to this incident, the only communications that he had with Officer Sullivan related to occasional inquiries regarding Mr. Robbins' need for clean sheets or blankets. [D.E. #21-2 at 41]. Mr. Robbins also acknowledges that prior to the alleged incident,

3

Officer Sullivan had never made any improper statements or comments to him. [D.E. #21-2 at 42]. Further, Mr. Robbins states he had no further conversations or communications with Officer Sullivan after the alleged incident. [D.E. #21-2 at 43]. Mr. Robbins admits that Officer Sullivan never touched him at any time. [D.E. #21-3 at 8].

Mr. Robbins submitted a grievance at 6:31 a.m. on December 29, 2013 by way of a computer kiosk in his cell block. [D.E. #21-2 at 45-46]. In his grievance, Mr. Robbins wrote:

> TO SHERIFF JOHN INGRAM I ALEXANDER ROBBINS WOULD LIKE TOO NO WHY I HAVE NOT BEEN OUTSIDE? I WAS SENTENCE TO 120 DAYS AND I SHOULD HAVE BEEN ABLE TO GO OUTSIDE I HAVE NOT HAD A HOT MEAL, BACKMOLD IS TAKING OVER THIS SUPPOSE TO BE JAIL I HAVE HAD OFFICER SULLIVIN [SIC] STEAL MAILING STAMPS AND TALK SEX TALK WITH ME IM SCARE FOR MY LIFE HERE

[sic] [D.E. #21-3 at 42].

Plaintiff acknowledges he received a response to his grievance the next day, December 30, 2013, at 11:43 a.m. This response stated:

> OK... FOR OUTSIDE TIME. WE DO NOT ALLOW OUTSIDE TIME BECAUSE THE STATE SAYS WE HAVE ADEQUATE SPACE FOR EXERCISE AND WE HAVE SKY LIGHTS FOR YOUR SUNLIGHT. THE HOT MEALS... NO THEY ARE NOT SCORTCHING HOT BUT THEY ARE SERVED AT A SAFE TEMP FOR ALL INMATES. 1ST SGT WILL GET UP WITH YOU REGAURDING THE MOLD PROBLEM, HE WANTS TO SEE AND AS FAR AS OFFICER SULLIVAN, OUR INTERNAL AFFAIRS SGT HAS BEEN CONTACTED AND HE WILL COME AND SPEAK WITH YOU ABOUT IT.

[sic] [D.E. #21-2 at 45; D.E. #21-3 at 8-9].

Plaintiff also acknowledges the First Sergeant came to see him sometime between December 30, 2013 and January 1, 2014 about the purported mold issue in his cell and that he advised plaintiff he would follow up concerning the issue. [D.E. #21-3 at 9-10].

Mr. Robbins was released from the Brunswick County Detention Center on January 2, 2014 and was immediately transferred to the New Hanover County Detention Center as a consequence of additional charges pending against him in New Hanover County. [D.E. #21-2 at 18-19]. Mr. Robbins was released from the Brunswick County Detention Center before the First Sergeant had the opportunity to report back regarding Mr. Robbins' complaint about mold in his cell. He was also released from the Brunswick County Detention Center before the Internal Affairs Sergeant had a chance to speak with him about his allegations against Officer Sullivan. [D.E. #21-3 at 11].

Mr. Robbins concedes he never filled out a sick call slip or otherwise sought medical attention for any issues while being held in the Brunswick County Detention Center. [D.E. #21-2 at 30-32; D.E. #21-3 at 13]. Mr. Robbins states he did not suffer or experience any significant medical issues while in the Brunswick County Detention Center and does not now have any medical conditions that did not exist before being admitted into the Brunswick County Detention Center. [D.E. #21-3 at 21-22].

5

The Brunswick County Detention Center is randomly inspected twice a year by the North Carolina Department of Health and Human Services. [D.E. #21-4 at 3; D.E. #21-5 at 4]. The Brunswick County Detention Center is also inspected annually by the Brunswick County Health Department. Contrary to Mr. Robbins' allegations regarding uncleanliness, Defendant Ingram and Ms. Jane Evans, the jail administrator, state that the Brunswick County Detention Center has never failed an overall sanitation inspection conducted by any agency or authority, including during the period of time that Mr. Robbins was housed there. [D.E. #21-4 at 3; D.E. #21-5 at 4].

Common areas of the jail are cleaned every day, while individual cells are cleaned every other day. [D.E. #21-4 at 2; D.E. #21-5 at 3]. The food at the Brunswick County Detention Center, which is eaten by prisoners and detention staff alike, is prepared by a vendor, Trinity Services Group. [D.E. #21-4 at 3; D.E. #21-5 at 5]. The menu and food are inspected and approved by a licensed dietitian who insures that the food meets regulatory requirements and standards for quality, quantity, and nutritional value. These inspections also confirm that the temperatures at which the food is prepared and served meet regulatory standards. [D.E. #21-4 at 3; D.E. #21-5 at 5].

The Brunswick County Detention Center has an ongoing contract with Grand Strand Chemical, a local pest control

company, which sprays for bugs and other pests on a quarterly schedule and makes additional visits if and when a need arises. [D.E. #21-4 at 5; D.E. #21-5 at 5]. In contrast to Mr. Robbins' allegations, Ms. Evans states that no bed bugs have been found to infest the Brunswick County Detention Center. [D.E. #21-5 at 5].

Mr. Robbins was housed in Detention Block C, a general population cell clock, during the time that he was housed in the Brunswick County Detention Center. [D.E. #21-2 at 35-37]. Detention Block C has a large common area, encompassing more than 2,000 square feet and illuminated in part by a skylight. In this common area, the prisoners can exercise, perform calisthenics, walk, or conduct a light jog. [D.E. #21-2 at 36-37; D.E. #21-5 at 6]. According to Mr. Robbins, he had the opportunity to roam in the common area for at least 8 hours a day. [D.E. #21-2 at 36-37].

## COURT'S DISCUSSION

### I. Standard of Review

Summary judgment is appropriate pursuant to Rule 56 of the Federal Rules of Civil Procedure when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a

7

genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Summary judgment is not a vehicle for the court to resolve disputed factual issues. Faircloth v. United States, 837 F.Supp. 123, 125 (E.D.N.C. 1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. Anderson, 477 U.S. at 249.

In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. The evidence must also be such that a reasonable jury could return a verdict for the non-moving party. Id. at 248. Accordingly, the court must examine "both the materiality and the genuineness of the alleged fact issues" in ruling on this motion. Faircloth, 837 F.Supp. at 125.

8

## II. Analysis

### A. Conditions of Confinement

To establish a prima facie case that prison conditions violate the Eighth and Fourteenth Amendments, "a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)) (internal quotation marks omitted). Although the Eighth and Fourteenth Amendments protection against cruel and unusual punishment with respect to living conditions is objective insofar as the alleged violation must rise to the level of a deprivation of a basic human need such as food, warmth, or exercise, Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991), the facts from which the inference could be drawn that a substantial risk of serious harm exists must be subjectively known by a prison official who makes the inference and disregards an excessive risk to the inmate's health or safety, Farmer v. Brennan, 511 U.S. 825, 834-42 (1994).

"To withstand summary judgment on an Eighth [and Fourteenth Amendments] challenge to prison conditions[,] a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler, 989 F.2d at 1381 (4th Cir. 1993). The court must

9

consider the "totality of the circumstances, including the extent to which the restrictions adversely affect the mental or physical health of the inmates," when making its determination whether the alleged conduct is a violation of the Eighth and Fourteenth Amendments. Clay v. Miller, 626 F.2d 345, 347 (4th Cir. 1980).

Mr. Robbins has not alleged sufficient facts to warrant the conclusion that he was deprived of a basic human need and suffered under any deliberate indifference of defendants in the instant case. The Brunswick County Detention Center has an established procedure for maintaining the facility in a sanitary and clean condition. [D.E. #21-4 at 3; #21-5 at 3]. Mr. Robbins does not present evidence that Brunswick County failed to follow its established procedure. Construing the facts in the light most favorable to Mr. Robbins, even if mold, bacteria, or other harmful elements were present within Mr. Robbins' cell, no evidence suggests that Mr. Ingram or Officer Sullivan were deliberately indifferent to its presence. The evidence shows that Mr. Robbins received a prompt response to his complaint.

Insofar as Mr. Robbins' claims rely upon an alleged infestation of bed bugs at the Brunswick County Detention Center, the evidence suggests that no such infestation was present during Mr. Robbins' confinement. A local exterminator, Grand Strand Chemical, was under contract with Brunswick County

Detention Center and regularly sprayed for bugs and pests. [D.E. #21-4 at 4; #21-5 at 5]. Mr. Robbins did not submit a grievance related to any problem with bed bugs while housed at the Brunswick County Detention Center and did not present evidence that he suffered serious medical detriment as a consequence of the alleged infestation.

Insofar as Mr. Robbins' claims rely upon his restriction from outdoor exercise, such a claim "is not the kind of extraordinary case of palpable deprivation of the minimal requirements of civilized existence in which an inference of serious injury might be reasonable." See Strickler, 989 F.2d at 1381-82. Although Mr. Robbins was not permitted to exercise outdoors because of lack of such facility at the Brunswick County Detention Center, Mr. Robbins does not dispute that he was given sufficient opportunity to exercise inside the facility. Mr. Robbins did not suffer deprivation of a basic human need or a violation of his constitutional rights when he was not permitted to exercise outside. See, e.g., Clay, 626 F.2d at 347 (no constitutional violation where inmates were permitted access to a day room eighteen hours each day); Sweet v. South Carolina Dep't of Corrections, 529 F.2d 854, 866 (4th Cir. 1975) (no constitutional violation where exercise was allowed only for two one-hour periods per week); Martin v. Tyson, 845 F.2d 1451, 1456 (7th Cir. 1988) (no constitutional violation where adequate

11

space was provided for a detainee to exercise in his cell, particularly where there were no available facilities outdoor to do so); Coil v. Peterkin, No. 1:07-CV-145, 2009 WL 3247848 (M.D.N.C. Oct. 5, 2009) (no constitutional violation where inmate was not permitted to exercise outdoors because of security concerns, where he had the opportunity to exercise inside the jail).

Even if Mr. Robbins has alleged sufficient facts to warrant a finding that his conditions of confinement effectively deprived him of a basic human need, he does not present sufficient evidence to warrant a conclusion from a reasonable jury that such conditions were a consequence of deliberate indifference by Mr. Ingram or Officer Sullivan in violation of his constitutional rights. Further, for the same reasons, Mr. Robbins has failed to state a claim related to his conditions of confinement against Mr. Ingram and Officer Sullivan for which relief may be granted.

B. Comment of a Sexual Nature

Mr. Robbins does not present sufficient evidence to warrant a conclusion from a reasonable jury that his constitutional rights were violated when Officer Sullivan allegedly observed Mr. Robbins urinating and later told him via the intercom, "Robbins, this is Sullivan. I could get you better sex than you ever had." Although Officer Sullivan unequivocally denies Mr.

12

Robbins' allegation, this court will construe the facts in the light most favorable to Mr. Robbins.

Even if Mr. Robbins' allegation regarding a comment of a sexual nature is true, this single episode of an inappropriate verbal comment by a prison official does not rise to a constitutional violation or deprivation under 42 U.S.C. § 1983. See, e.g., Johnson v. Laham, No. 91-7296, 1993 WL 469160, at *3 (4th Cir. Nov. 15, 1993) ("Verbal harassment or abuse by prison officials in itself does not state a constitutional deprivation under section 1983."); Cole v. Cole, 633 F.2d 1083, 1091 & n. 11 (4th Cir. 1980) (absent accompanying allegation of harm, allegation of verbal harassment and abuse failed to state a claim). Mr. Robbins does not allege that Officer Sullivan engaged in any corresponding physical activity that was harmful or offensive in addition to this single comment of a sexual nature. Indeed, Mr. Robbins admits Officer Sullivan never touched him. [D.E. #21-3 at 8].

Consequently, even if Officer Sullivan made a comment of a sexual nature as Mr. Robbins claims, no reasonable jury could find that Mr. Robbins' claim against Officer Sullivan rises to the level of a constitutional violation. See Jones v. Harris, 665 F.Supp.2d 384 (S.D.N.Y. 2009) (allegation that a corrections officer verbally propositioned a prisoner on a single occasion, without engaging in any physical activity, simply does not rise

13

to the level of a constitutional violation); See also Whaley v. Ledbetter, No. 1:08-CV-169-02-MU, 2008 WL 1924258 (W.D.N.C. April 29, 2008) (prisoner's allegations that defendant detention officer asked prisoner to expose his genitals so that defendant could "touch it to see what [was] wrong" fell "far short of stating a constitutional claim for relief."). Further, for the same reasons, Mr. Robbins fails to state a claim related to the alleged comment of a sexual nature against Officer Sullivan for which relief may be granted.

### III. Mr. Robbins' "First Request of Production of Documents"

Defendants' motion for summary judgment was filed on August 5, 2014. The Clerk of Court issued a Roseboro letter to Mr. Robbins instructing him to file any response to defendants' motion for summary judgment by August 26, 2014. Mr. Robbins timely filed a motion for extension of time to respond. The motion was granted, and plaintiff's response deadline was extended to September 25, 2014.

Mr. Robbins attempted to file an unsigned document entitled "Plaintiff First Request of Production of Documents" that was received by the Clerk of Court on September 18, 2014. The document was not filed and returned to Mr. Robbins due to his failure to sign the document in violation of Rule 26 (g)(2) of the Federal Rules of Civil Procedure. Magistrate Judge Robert B. Jones, Jr. issued an order instructing Mr. Robbins to correct

14

the deficiency and return the document within twenty-one (21) days of filing. Although his original unsigned document and the order by Magistrate Judge Jones (hereinafter "documents package") were sent to Mr. Robbins' last known address on September 18, 2014, Mr. Robbins states he did not receive the documents package until October 22, 2014. Mr. Robbins did not notify the court of any change of address before November 17, 2014 and did not allege in that notice that his address had changed before receipt of the documents package.

After affixing his signature, Mr. Robbins refiled his request for production on October 27, 2014, which was over two weeks after the deadline set by Magistrate Judge Jones. Attached to the document was a memorandum requesting the court to dismiss or stay defendants' motion for summary judgment "pending discovery." In his memorandum, Mr. Robbins states that he hasn't "yet had access to discovery to investigate and validate information." He continues by alleging he knows "of other inmates who had problems with harassment from Officer Sullivan and complaints with equal protection being that department of correction policy for rights of inmates exercise and recreation was not uniform and the safety of food." [sic] [D.E. #28 at 3].

Mr. Robbins commenced this action in February, 2014, and he has been afforded sufficient time to research his claims and an extended time to respond to defendants' motion for summary

15

judgment. Mr. Robbins has not stated specific or sufficient reasons to warrant a determination by the court that he could not present facts essential to justify his opposition to defendants' motion for summary judgment. In view of the foregoing and because this court concludes that Mr. Robbins not only failed to present sufficient evidence to warrant a reasonable jury's finding in his favor but also failed to sufficiently state a claim for which relief can be granted, this court denies Mr. Robbins' request to dismiss or stay defendants' motion for summary judgment.

## CONCLUSION

For the foregoing reasons and reasons more fully set forth in defendants' memorandum in support of their motion, defendants' motion for summary judgment [D.E. #20] is GRANTED. Inasmuch as Mr. Robbins' filing [D.E. #28] can be construed as a motion to dismiss or stay defendants' motion for summary judgment, his motion is DENIED. The clerk is directed to close this case.

This 26th day of February 2015.

Malcolm J. Howard
Senior United States District Judge

At Greenville, NC
#34

16